UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRACIE L. WASHINGTON, | ∞ | CIVIL ACTION NO.: |
| Plaintiff | ∞ | 19 – CA - 9719 |
| | ∞ | |
| Versus | ∞ | SECTION |
| | ∞ | |
| MARLIN N. GUSMAN, Sheriff for the Parish of Orleans | ∞ ∞ | |
| Defendant | ∞ | MAGISTRATE _____ |

**ORIGINAL COMPLAINT FOR DAMAGES AND JURY DEMAND**

Comes now Plaintiff Tracie L. Washington (Plaintiff or Plaintiff Washington), and for cause of action would state as follows:

**I. JURISDICTION AND VENUE**

1. This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C §2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. §2617 and 28 U.S.C. §§1331, 1332, 1343, and 1367.

2. The claims asserted in this action arose within this district and the alleged statutory violations and damage occurred in this district. Venue for this action is properly set in the United States District Court for the Eastern District of Louisiana pursuant to 29 U.S.C. §2617 and 28 U.S.C. §1391.

**II. PARTIES**

3. Plaintiff is and at all time material hereto a citizen of the State of Louisiana, residing in Orleans Parish, Louisiana.

4. Defendant is the duly elected sheriff of the Parish of Orleans, State of Louisiana. He is the official "policymaker" for the Orleans Parish Sheriff's Office (hereinafter, "OPSO") and was Plaintiff's employer. He is sued in both his official capacities.

### III.  FACTS

5. At all times material hereto, Plaintiff Washington was Defendant's employee.

6. Defendant is party to a Consent Judgment – executed and filed with this Court on June 6, 2013 – which requires Defendant "hire and retain, or reassign a current OPSO employee for the duration of this Agreement, to serve as a full-time OPSO Compliance Coordinator."

7. Defendant hired Plaintiff to serve in the capacity of OPSO Compliance Coordinator, and she began work for Defendant as Compliance Coordinator on May 19, 2014.

8. Plaintiff's salary was $80,000 per annum. Plaintiff was entitled to ten (10) vacation days, and ten (10) sick days per year, along with other health, welfare, and financial benefits provided to Orleans Parish Sheriff's Office employees.

9. Effective August 1, 2014 Plaintiff's title changed from Compliance Coordinator to Chief Compliance Officer.

10. Plaintiff's employment duties, salary, and benefits did not change on August 1, 2014.

11. On June 16, 2016 Defendant entered into a Stipulated Agreement, allowing for the appointment of an Independent Jail Compliance Director to oversee the operations of the Orleans Parish jail facilities and the entire prisoner population.

12. The Independent Jail Compliance Director position did not replace the requirement that Defendant retain an individual performing the functions of Compliance Coordinator.

13. On October 1, 2016 Gary Maynard was appointed OPSO's Independent Jail Compliance Director.

14. On November 18, 2016 Defendant designated Plaintiff as Chief Legal Officer, expanding her duties to "supervise and coordinate all inmate legal requests, be an instructor for the Training Academy in Sexual Harassment and Ethics, the designated responder to any Public Records Requests, the designated Ethics Officer, and the reviewer of legal billings." Further, Defendant indicated "[t]here may be additional duties depending on the work load and the needs of the office."

15. On May 8, 2017 Plaintiff was re-assigned to report to Michael Tidwell, OPSO's Chief of Corrections. Tidwell informed Plaintiff while she could retain her title as Chief Legal Officer, she would return to performing compliance coordinator duties, including assisting with policy and procedure writing, training, and other duties as may be needed. Plaintiff memorialized this directive and re-assignment by email.

16. On May 9, 2017 Plaintiff wrote to Director Maynard and Sheriff Gusman to express grave concern about the reassignment. Plaintiff wrote as follows:

> "I understand I have been reassigned as a direct report to Sheriff Gusman, to working under the supervision of Michael Tidwell, the re-hired Chief of Corrections. As you know Sheriff Gusman, during Mr. Tidwell's last employment with OPSO I reported to you concerning his unprofessional behavior toward me and sought your intervention. Shortly thereafter Mr. Tidwell resigned. I'm not certain how it is that I was reassigned to work with an individual against whom I had filed a harassment complaint, but I have agreed to accept this change in reporting protocol because I understand most of the work that he didn't want me to help with two (2) years ago (policies; training protocol, compliance,

*etc.) has not been completed and, according to the latest monitors' report, OPSO has regressed. The caveat to my acceptance of this reassignment is that I will not be penalized with a demotion in salary or rant (Chief), and that Mr. Tidwell will behave professionally. I understand there's a tremendous amount of work to be done. Obviously I'm qualified to help with these tasks, and I've begun today working on several lesson plans for the training division."*

17. On May 15, 2017 Independent Compliance Director Gary D. Maynard and Director of Human Resources Johnette J. Staes each responded to Plaintiff's May 9, 2017 email indicating they would review and follow-up. Plaintiff was never again contacted concerning Tidwell's harassment.

18. Beginning May 8, 2017 through February 26, 2018, Plaintiff worked drafting policies, training protocol, and compliance, and reporting to Tidwell.

19. On Monday, February 26, 2018 as Plaintiff was returning to her office from lunch, Tidwell drove his truck alongside Plaintiff and summoned her to speak with him. Tidwell told Plaintiff he was relocating her from the Kitchen Warehouse to a cubical outside his office, stating "I need to keep my eye on you" as he stared at Plaintiff's legs. Plaintiff looked into Tidwell's SUV and noticed his pants were unzipped and his genitals were exposed. Plaintiff was shaken physically but returned to her office.

20. Upon returning to her office, Plaintiff began receiving harassing emails and calls that resulted in Plaintiff becoming disoriented, dizzy, and experiencing blurred vision. Plaintiff left the office immediately to seek medical attention. Plaintiff was informed her blood pressure was dangerously high, and that she could have suffered a stoke. Plaintiff was sent home and told to rest. Plaintiff's condition worsened and she was taken to Ochsner Medical Center for emergency medical treatment.

21. On February 28, 2018, Plaintiff wrote to Sheriff Gusman concerning her medical status, informing her blood pressure had not stabilized and she would not be able to return to work until her blood pressure was under control.

22. On March 1, 2018 began sick leave.

23. On information and belief, on the evening of March 1, 2018, Tidwell removed the lock from Plaintiff's office door, writing to Attorney Tracie Washington, Compliance Coordinator, "you are directed to immediately report to the Administrative Office of the Orleans Justice Center, 4th floor. You are to meet, in person, General Counsel Blake Arcuri for further instructions."

24. On Monday, April 23, 2018 Plaintiff returned to work from sick leave and submitted her request for FMLA leave status covering the period March 1, 2018 – April 23, 2013.

25. On Monday, April 23, 2018 Plaintiff then attempted to report to Arcuri, as directed by the March 1, 2018 email from Tidwell.

26. Instead, on Monday, April 23, 2018 at 1:48 pm, Arcuri sent Plaintiff an email message stating:

   a. "You've never held the position of 'Chief Legal Officer,' nor have you ever worked in any such capacity for the Orleans Parish Sheriff's Office;
   b. Plaintiff had falsified the title "Chief Legal Officer" and conferred it upon herself;
   c. Plaintiff's employment file "has never contained that reference, a personnel action form granting that tile had never been signed, and perhaps most importantly, the position has not existed at this agency during your period of employment; and
   d. **"Your position was, and remains 'compliance coordinator,' as is apparent in the AS400."**

When Plaintiff presented Arcuri with a copy of Defendant's November 18, 2016 email (¶14 above), Arcuri became unhinged and began screaming at her, in the 4th Floor lobby.  Arcuri's action's caused Plaintiff to experience a severe hypertensive episode.

27. On April 24, 2018 Plaintiff complained to Arcuri's supervisor, Independent Jail Compliance Director Darnley R. Hodge, providing full details concerning what had transpired, as follows:

> I write to you Director Hodge as Blake Arcuri's direct supervisor, and I have copied Judge Lance Africk because you report directly to the federal court.  If I need to seek judicial redress, I want to be certain everyone received notice.  I've copied Sheriff Gusman because he is the duly elected sheriff of Orleans Parish, and I learned last evening he conducted some form of investigation of the incident (below) yesterday.
>
> I don't know how to relay how terrified I felt yesterday afternoon as Blake Arcuri completely lost control of himself, turning beet red as he was lunging toward me, yelling at me, pointing his finger in my chest, and calling me a liar as he screamed, apoplectic about my title at OPSO.  My head was pounding, and I was becoming [disoriented].  I was trying to leave.  He came lunging at me again, yelling if I left [that] I'd be marked as AWOL because only he could approve my sick leave.  I couldn't catch my breath.  I asked Ms. Elan to please call 911.
>
> **Blake Arcuri ordered Deputy Elan not to call 911.  She attempted to dial, but he walked toward her and ordered her to put down her phone.**  I don't know if what he did then was a crime.  It should be!  I don't know if any of you have experienced violent pain in your head and numbness in your arms and hands.  I couldn't fix my eyes to see numbers on my phone.  I begged Deputy Elan to please call 911.  Arcuri threatened her again and told her he would call NOPD.  I collapsed in the chair and reached 911 with my phone's emergency button.  I was too disoriented to respond to the operator's questions.  Deputy Elan then called 911 in spite of Arcuri's threats.
>
> I laid on the floor in front of the elevator in crisis.  Ultimately the OPSO medical unit came and administered CPR.  All the while Blake Arcuri paced back and forth in front of my body staring at me. He was red.  He was sweating.  He was enraged, and he terrified me.  There is absolutely no doubt in my mind Blake Arcuri wanted to kill me.  Deputy Elan yelled for him to leave.  Deputy Elan and the nearly 20 Black women who kept me from losing consciousness and protected me from Arcui saved my life.  You should know this.
>
> I am returning to work today. I don't know whether Blake Arcuri's employment has been terminated.  What type of person sees someone in medical distress and orders no

*assistance? He's monstrous. Frankly, I don't know what type of employer would want that individual on staff. But I am employed by OPSO, so I have no doubt Mr. Arcuri will not be disciplined.*

28. On April 24, 2018 Plaintiff's FMLA leave request was approved, as processed by Denise Hodges, OPSO Human Resources Benefits Coordinator. OPSO did not designate Plaintiff as a key employee and, according to Denise Hodges, OPSO has never designated anyone as a 'key employee' under FMLA.

29. OPSO has never designated an employee as a 'key employee' under FMLA.

30. On April 24, 2018 Plaintiff returned to work performing the tasks she had been assigned by Tidwell prior to her FMLA leave.

31.

32. On April 25, 2018 Plaintiff returned to work performing the tasks she had been assigned by Tidwell prior to her FMLA leave.

33. On April 26, 2018, Plaintiff returned to work but was met by Debra Hammons, who gave her a letter from Hodge (letter dated April 25, 2018), informing Plaintiff "Sheriff Gusman had no authority to give you a title or employment duties [on November 18, 2016]. I am eliminating this unauthorized position [Chief Legal Officer], and, in my capacity as Compliance Director, terminating your employment, effective immediately."

34. Instead of responding to the complaint by Plaintiff against Arcuri, Compliance Director Hodge used the excuse of eliminating the Chief Legal Officer position as subterfuge for the unlawful termination, knowing full well Plaintiff was in fact the Compliance Coordinator.

35. Plaintiff was entitled to return to the position she held when her leave commenced (Chief Legal Officer or Compliance Coordinator), or to an equivalent position.

36.     On April 26, 2018 OPSO's payroll system (ADP) still listed Plaintiff as Compliance Coordinator.

37.     As late as August 9, 2018, Defendant reported Plaintiff's position as Compliance Coordinator on an Employment Verification Form.

38.     As a proximate cause of Defendant's conduct, Plaintiff has not been compensated since being terminated from employment and has been required to expend significant personal sums for her own physical and mental well-being.  Additionally, as a proximate cause of Defendant's conduct, Plaintiff has been unemployed full-time and has been and will continue to experience a loss of wages while being forced to expend significant personal sums in order to provide for food, shelter, and all other living expenses.

39.     Plaintiff has suffered immeasurable humiliation, pain, and suffering as a result of Defendant's actions.

### IV.  CLAIMS FOR RELIEF

#### FIRST CLAIM FOR RELIEF
#### (COMPENSATORY DAMAGES UNDER FMLA 29 U.S.C. § 2617)

40.     That Plaintiff hereby incorporates by reference the Introduction and Paragraphs 1 through 39 above as though fully set forth herein.

41.     That Defendant qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. 2611(4), and Plaintiff is an "eligible employee" as that term is defined in FMLA, 29 U.S.C. 2611(2).

42.     That based on the allegations above, there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. 2612(1), and that Plaintiff was granted FMLA leave as prescribed in FMLA.

43. That based on the allegations above, Plaintiff was entitled to restoration to her position as described in the FMLA, 29 U.S.C. 2614(1), and Plaintiff was denied restoration to the same or an equivalent position as prescribed in the FMLA.

44. That based on the allegations above, Defendant is responsible under the FMLA, 29 U.S.C. 2617(a).

45. That as the result of Plaintiff's termination from employment she has incurred and is now incurring a loss of wages and medical expenses in an amount to be proved at trial, but believed to exceed $100,000 including without limitation, lost wages, back pay from the effective date of termination and lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. 2617.

46. That based on the allegations above, Plaintiff is entitled to recover costs including but not limited to attorneys' fees, which exceed $10,000 as of the date of this complaint.

47. Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the amount described in Paragraph 46 and the interest thereon at the prevailing rate as provided in the FMLA 29 U.S.C. 2617.

## SECOND CLAIM FOR RELIEF
### (DECLARATORY RELIEF FOR COMPENSATORY DAMAGES UNDER FMLA 29 USC § 2617)

48. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 – 48 above.

49. An actual controversy now exists between Plaintiff and Defendant in that Plaintiff contends Defendant is liable under the FLA, 29 U.S.C. 2617(a), for all lost wages,

benefits, and costs incurred and to be incurred by Plaintiff, and reinstatement of Plaintiff to her previous position or an equivalent position. Plaintiff is informed and believes, and on that basis alleges, Defendant contends in all respects to the contrary.

50. A declaration of the rights and obligations of the parties, pursuant to the FMLA, 29 U.S.C. 2617(a), binding in any subsequent action or actions to recover further costs incurred by Plaintiff, is appropriate and in the interests of justice.

**WHEREFORE,** the Plaintiff respectfully requests that this Court enter an Order of Judgment in Plaintiff's favor against the Defendant (a) for compensatory damages and other costs incurred by Plaintiff according to proof; (b) for all lost wages and employment benefits; (c) for all front pay and future lost benefits; (d) for reinstatement to her previous or an equivalent position; (e) for reasonable attorneys' fees; and (f) for such other and further relief as the Court deems just and proper, in law or equity.

Dated:  April 24, 2019			TRACIE L. WASHINGTON, APLC


				_____
				Tracie L. Washington, Bar No. 25925
				3157 Gentilly Boulevard, No. 132
				New Orleans, Louisiana  70122
				Tel:    504.872.9134
				Email:  tracie.washington.esq@gmail.com