# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| LASHAWN JONES, *et al.*, <br> Plaintiffs, and <br><br> UNITED STATES OF AMERICA, <br> Plaintiff in intervention <br><br> v. <br><br> MARLIN GUSMAN, *et al.*, <br> Defendants. <br><br> MARLIN GUSMAN, <br> Third-Party Plaintiff <br><br> v. <br><br> THE CITY OF NEW ORLEANS, <br> Third-Party Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:12-cv-00859 <br> Section I, Division 5 <br> Judge Lance M. Africk <br> Magistrate Judge Michael B. North |

## STIPULATED ORDER FOR APPOINTMENT OF INDEPENDENT JAIL COMPLIANCE DIRECTOR

This litigation was filed by prisoners housed in the Orleans Parish Prison in April 2012.

ECF No. 1. In December 2012, Defendant Sheriff Marlin Gusman ("the Sheriff") and the

Plaintiff Class and the Plaintiff in Intervention United States (collectively, "Plaintiffs") agreed to

a Consent Judgment, seeking to address deficiencies in safety and security, medical and mental

health care, environmental conditions, fire safety, and limited English proficiency services at the

Orleans Parish jail facilities ("the Jail"). ECF No. 101-3. In June 2013, this Court approved the

Consent Judgment, which requires the Sheriff to implement systemic and durable reforms to

address pervasive and longstanding problems at the Jail. ECF No. 466 ("Consent Judgment").

This Court eventually approved the selection of the lead monitor and six sub-monitors ("Monitors") to ensure swift and effective implementation of the Consent Judgment. ECF No. 565. On October 21, 2013, the Court entered a settlement agreement between the Sheriff and the City of New Orleans ("City") related to funding for the Jail. ECF No. 583.

Since that time, the Monitors have conducted five official monitoring tours and numerous additional visits to the Jail, provided extensive technical assistance, and filed five reports documenting the Sheriff's level of compliance with the Consent Judgment. Monitors' Report No. 1, at 3, Feb. 13, 2014, ECF No. 609; Monitors' Report No. 2, at 10, Aug. 26, 2014, ECF No. 744; Monitors' Report No. 3, at 8, Feb. 25, 2015, ECF No. 790; and Monitors' Report No. 4, at 6, Sept. 9, 2015, ECF No. 881; Monitors' Report No. 5, at 21, Mar. 17, 2016, ECF No. 996.

On April 25, 2016, Plaintiffs filed a Motion for an Order to Show Cause Why Defendant Sheriff Marlin Gusman Should Not be Held in Contempt and for Appointment of a Receiver to Implement the Consent Judgment. ECF No. 1009. Sheriff Gusman has opposed and defended against this motion. ECF No. 1020. The parties presented evidence at a six-day evidentiary hearing, which had not been concluded. The parties enter into this agreement order to avoid continued litigation and appeals.

It is **AGREED by the parties and ORDERED by the Court** that the aforementioned additional remedial relief will consist of the following:

A.   <u>**Appointment by the Sheriff of an Independent Jail Compliance Director to Implement the Consent Judgment**</u>

1.   The Independent Jail Compliance Director ("Compliance Director") will have final authority to operate the Orleans Parish Jail ("OJC") and all jail facilities, including authority over the entire prisoner population in the custody of the Orleans Parish Sheriff's Office ("OPSO"), housed inside or outside of Orleans Parish, and is charged with doing so in a manner

to achieve substantial compliance with each provision of the Consent Judgment on a timely basis, as further described in the remedial action plan to be drafted by the Compliance Director. The Compliance Director shall seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent Judgment, unless doing so would cause unreasonable delay, and otherwise regularly inform the Sheriff regarding jail operations.

2.  The Compliance Director's authority will continue until the Court determines that sustained and sustainable material progress with substantial compliance with the Consent Judgment is achieved, as described in more detail below. At a minimum, this shall mean that required policies have been developed and implemented per the Consent Judgment, staff have been adequately trained on those policies, and OPSO has developed a quality assurance/audit system that effectively evaluates whether staff are implementing the policies in practice and corrects their conduct when they do not. The Compliance Director will be answerable only to the Court.

3.  Subject to final approval by the Court, the Sheriff shall appoint the Compliance Director from three candidates jointly nominated by the Plaintiff Class, the Plaintiff in Intervention, and the City of New Orleans, unless only two acceptable candidates can be agreed upon by the Plaintiff Class, the Plaintiff in Intervention, and the City of New Orleans, in which case two candidates will be provided. The Parties may enlist the assistance of the U.S. Magistrate Judge assigned to the case to assist in this process if necessary. The Plaintiffs, City, and the Sheriff may agree on a single candidate to propose to the Court. The Court retains the authority to reject any proposed appointment and to direct the parties to propose an additional candidate(s).

4.    The Compliance Director will be a full-time position based in New Orleans until the Jail has achieved sustained and sustainable material progress with substantial compliance, as defined in Section A.2. and as determined by the Court.

5.    The Compliance Director's salary will be established by the Court upon appointment, and the salary and benefits will be commensurate with comparable high-level local governmental officials.  The Compliance Director will be an independent contractor.  The costs of the Compliance Director and all costs related to the Compliance Director's work will be presented by the Compliance Director as part of the Jail's budget.  The Compliance Director's office space will be established in the OJC and support services shall be part of the Jail's budget. The Compliance Director will be responsible for submitting the Jail budget to the New Orleans City Council for approval and appropriation subject to the provisions of Paragraph D.8. below.

6.    The records of the Compliance Director, other than communications with the Court, are public records and subject to public inspection.  The Compliance Director shall not be retained by any current or future litigant or claimant in a claim or lawsuit against the City, Sheriff, or their employees in a Jail conditions-related claim or any litigation by or against the Sheriff, but shall be required to testify in this matter if called by any Party or the Court.

7.    Issues regarding the interpretation or implementation of this agreement shall be referred to the United States Magistrate Judge assigned to the case for resolution.  Any Party or the Compliance Director may seek review of the Magistrate Judge's determination by the District Judge.

**B.    Public Information and Transparency**

Within six months of appointment, the Compliance Director and the Sheriff will establish regular quarterly public meetings, to allow access to the Compliance Director and the Sheriff by

stakeholders and interested members of the New Orleans community. At the quarterly meetings the Compliance Director and the Sheriff will update the public on events, accomplishments and setbacks in the preceding quarter, as well as afford the public the opportunity to ask questions.

**C.      Role of the Monitors Upon Appointment of the Compliance Director**

1.      Unless otherwise ordered or indicated below, subject to the Consent Judgment, the Monitors' duties and responsibilities will remain unchanged, and will stay in effect until substantial compliance is achieved and maintained for two (2) years. It will remain the Monitors' obligation to evaluate progress toward compliance with the requirements of the Consent Judgment, independent of any Party including the Compliance Director. These duties include the continuation of the Monitors' semi-annual reports, drafts of which will be provided simultaneously to the Compliance Director and the Parties. With the appointment of the Compliance Director, less technical assistance will be expected and required of the Monitors.

2.      The Compliance Director and the Monitor will be independent positions that report to the Court and are not answerable to each other, beyond the Compliance Director's directing the Jail's periodic compliance and status reporting pursuant to the Consent Judgment.

**D.      Duties and Authority of the Compliance Director**

The Compliance Director shall have the following duties and authority:

1.      Within 90 days of his or her appointment, the Compliance Director will file into the Court record an initial remedial action plan ("Plan"), to be approved by the Sheriff, that both addresses the deficiencies that led to noncompliance and explains how the Plan will facilitate sustainable compliance with the Consent Judgment within one year of the appointment of the Compliance Director. The Sheriff's approval of the initial Plan shall not be unreasonably withheld. The Court shall adjudicate any disputes regarding the Plan following the Compliance

Director's filing of the Plan, and the Plan will become final thereafter. Two weeks before the 90-day filing deadline, a draft will be provided to the Parties. If the Sheriff does not approve the Plan by the 90-day deadline, the Compliance Director shall file the Plan and the Sheriff may file a dispute with the Court.

2.      The Plan will include concrete deadlines for steps toward substantial compliance with the Consent Judgment provisions. The presumption and expectation of the Compliance Director shall be that substantial compliance can be obtained for the majority of all provisions within one year of the Compliance Director's appointment.

3.      If a Consent Judgment provision cannot be brought into substantial compliance with concrete steps in one year, the Plan will provide specific deadlines for compliance as soon as is practicable thereafter.

4.      As noted above, in developing the Plan, the Compliance Director will consult directly with the Sheriff and relevant Jail staff. The Compliance Director will also seek the input of Plaintiffs, the City, the Monitors, and the Budgetary Working Group Chairperson.

5.      The Compliance Director will work closely and communicate regularly with the Sheriff, OPSO Jail staff, Plaintiffs, City personnel and the Monitors to develop and implement the Plan. The Plan will include:

   a.   Strategies to decrease the number of prisoner-on-prisoner and prisoner-on-staff assaults at the Jail.

   b.   Strategies to accomplish sustainable hiring measures, including emergency measures if necessary.

   c.   Strategies for maintaining a positive, professionalized culture among all Jail staff.

d.  Strategies to ensure adequate and effective staff presence and deployment throughout the Jail, including systems of oversight for overtime, leave, off-duty details and reserve deputies.

e.  Strategies to ensure timely completion of critical policies and procedures that remain outstanding.

f.  Strategies to ensure that staff members receive adequate training on policies.

g.  Strategies to ensure that direct supervision is consistently enforced throughout the Jail, making certain that there are staff physically present on every tier in the Jail.

h.  Strategies to prevent undue reliance on cell confinement/lockdown throughout the Jail for all populations.

i.  Strategies to timely return prisoners housed out of parish to Orleans Parish.

j.  Strategies to ensure that prisoners placed on suicide precautions are adequately monitored, evaluated, and treated.

k.  Strategies to reduce incidents of suicide and self-harm.

l.  Strategies to ensure that prisoner-filed grievances and incidents of harm to prisoners and staff are thoroughly and fairly investigated in a timely manner.

m.  Strategies to ensure that any staff use of force is appropriate and all uses of force are accurately recorded.

n.  A plan for ensuring the Early Intervention System is effective.

o.  Strategies for maintaining acceptable sanitation and environmental conditions throughout the Jail.

p.  Strategies for ensuring the disciplinary system is effective and affords prisoners due process.

q. Strategies to ensure the implementation of budget control measures and competition in procurements, including but not limited to a process to ensure regular communication between the Chief Financial Officer for the Jail and the Financial Liaison for the City.

r. A framework for comprehensive analysis of all individuals on OPSO's payroll and strategies to address the staffing deficiencies outlined by the Monitors' reports.

s. Maintaining an organizational chart and job descriptions that reflect an organizational structure that adequately supports the Jail.

6. The above list of requirements is not exhaustive but is intended to prioritize critical areas. Tasks and reforms related to the following areas are key to ensuring the sustained, durable change required by the Consent Judgment: use of force, supervision, staffing, internal accountability systems, services for and protection of youthful prisoners, medical and mental health care, and the quality of investigations completed by the Investigative Services Bureau and Internal Affairs Division. Although the identified areas are of utmost importance, unless otherwise ordered, the Court nonetheless expects sustainable compliance with all Consent Judgment requirements.

7. Sixty days after the filing of the Plan and every 60 days thereafter, the Compliance Director will file with the Court a bi-monthly status report that will include any substantive changes to the Plan, including changes to persons responsible for specific tasks or action items, and the reasons for those changes. The bi-monthly status report will also discuss progress toward implementing the Plan. It also will include outcome data on the numbers of (1) incidents involving prisoner-on-prisoner and prisoner-on-staff violence; (2) opened PREA

investigations; (3) excessive and/or inappropriate force by staff; (4) incidents of suicide attempts and self-harm; (5) prisoners located in outside parish jail facilities; (6) improper custodial placement; and (7) staff hired, resigned or terminated in the preceding month. The report will also describe any barriers to progress, any corrective action taken by the Compliance Director to address inadequate progress, and any other matters deemed relevant by the Compliance Director. In addition to these written reports filed with the Court, the Compliance Director will report on his or her efforts, progress and challenges in open court at each Court status conference.

8.      Within 120 days of his or her appointment, if the Compliance Director deems it necessary and after consultation with the City Financial Liaison, the Budgetary Working Group Chairperson and the Chief Financial Officer for the Jail, he or she will submit to the City Chief Administrative Officer a revised Jail Operations budget ("Jail Budget") for the current fiscal year that includes funds to implement the Plan requirements for the remainder of the year and that considers cost savings measures and input from all parties. The Jail Budget for each fiscal year will be comprised of line items that clearly specify the purpose for each request. The Jail Budget for each fiscal year will be presented with sufficient supporting documentation to determine the amounts and purpose for the funding amounts requested and will be presented in the format requested by the City and City Council. The Jail Budget for each fiscal year will reflect functions and all staff positions set forth in the "Criminal Division" section of the 2016 proposed budget for OPSO, unless the Compliance Director determines such functions and/or positions are not necessary.   All staff positions and functions of the "Criminal Division" for OPSO will be under the authority of the Compliance Director.   In developing the Jail Budget and to maximize funding available for jail operations, the Compliance Director shall have exclusive control over all funding sources available to OPSO for jail operations, including, but not limited to, grant

funding and Law Enforcement District millage funding.  The Compliance Director, the Sheriff,
the City Financial Liaison and OPSO bond counsel shall meet each year prior to final allocation
of Law Enforcement District millage funding to confirm appropriate allocation of millage
funding to jail operations.

9.      The Compliance Director will appear with the Sheriff at all City Council Budget
Committee meetings requested by the City Council Budget Committee and/or the full City
Council and respond to reasonable requests for information from the City Council about the Jail
budget.  The Jail budget must be considered and approved by the City Council.

10.      The Compliance Director and the Chief Financial Officer for the Jail shall work
directly with the City Financial Liaison to implement financial measures to ensure that money
allocated for Jail expenditures is spent accordingly and to maximize cost savings, if any, that can
be realized through collaboration with the City.  In doing so, the Compliance Director and the
Chief Financial Officer for the Jail shall work with the City to implement a plan for regular and
detailed financial reporting, to review and, if necessary, revise and/or implement policies
regarding vehicle use and to review and, if necessary, revise and/or implement policies regarding
off-duty details for deputies.  The Compliance Director, the Chief Financial Officer for the Jail,
and the City Financial Liaison will meet no less frequently than quarterly.

11.      Until the Compliance Director submits the Jail budget to the Court, the
Compliance Director will administer payments from the current Jail budget.  If at any point the
Compliance Director needs funds for Consent Judgment compliance that are not budgeted for
that fiscal year and cannot be covered through cost savings, the Compliance Director will
immediately notify the City of the specific purpose and amount of funds needed and the cost
savings considered and will meet with the City's Financial Liaison.  If the issue is not timely

resolved, the Compliance Director or any Party may request an expedited hearing before the Court.

12.     The Compliance Director also shall facilitate Plaintiff Class and the Plaintiff in Intervention's unrestricted access to prisoners, staff, and documents related to the Jail pursuant to the Consent Judgment. The Compliance Director is a representative of the Court and is not an employee of OPSO and thus is expected to communicate directly with any Party, including Plaintiffs and the City, as well as the Monitors. In addition, Plaintiffs shall:

a.     be provided with any requested Jail or case related documents within 14 days of a request, including specifically but not limited to all incident reports, investigation files, medical files, intake documents, staff rosters for all Jail employees, staff schedules, salary and payroll information, and overtime files. Plaintiffs will be provided with documents contained within open and closed investigation files. In the extraordinary circumstance where the production of a particularized document within an open investigation file would jeopardize the integrity of a criminal investigation, the Plaintiffs will be provided a log identifying the withheld document. The withheld document will be produced to the United States Magistrate Judge assigned to the case for in camera inspection. The court will determine whether the document should be produced, withheld, or produced subject to a protective order;

b.     have regular access to the AS400 at the public defenders level (or other system if AS400 is replaced);

c.     be provided with monthly summaries of incident reports provided to the Monitors;

      d.     have full access to any documents related to the Compliance Director's duties that are in his or her possession, other than communications with the Court; and

      e.     be afforded the opportunity to have OPSO post information about the Consent Judgment, including contact information for both Plaintiffs' counsel and the Monitors, in visible locations on tiers in the Jail.

13.     The Compliance Director shall, at his or her discretion or at the request of the Court, the Monitors, or the Plaintiffs, develop a corrective action plan for any task for which the Monitors find the Jail to be out of compliance.  As part of any such plan, the Compliance Director will determine the nature and frequency of future internal compliance testing for that task.

14.     The Compliance Director will have the final authority to review, investigate, and take corrective action regarding OPSO policies, procedures, and practices that are related to the Consent Judgment.

15.     The Compliance Director will have final authority to create, modify, abolish or transfer employee and contractor positions; to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees and contractors and will recommend increased compensation for staff to the extent necessary to obtain compliance with this Court's orders, the cost of such activity to be included in the Compliance Director's Jail budget.

16.     Notwithstanding the authority described in Paragraph D.15 above, with regard to (1) individual employees who have attained the rank of Captain or higher, and (2) contractors, termination of employment will be for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance.

17.    The Compliance Director shall have the final authority to competitively procure and contract for such supplies, equipment or services as are necessary to obtain compliance with this Court's orders.  The costs of such procurement and contracts are to be included in the Compliance Director's Jail budget.  The Compliance Director shall have the final authority to negotiate and/or renegotiate and finalize all resulting contracts and the Sheriff and the Compliance Director shall jointly execute contracts.

18.    The Compliance Director shall have the final authority to hire consultants through competitive process and selection, or to obtain such technical assistance as he or she deems necessary to perform his or her functions, the cost of such contracts to be included and specifically identified in the Compliance Director's Jail budget.

19.    The Compliance Director shall have the final authority to direct specific actions to attain or improve compliance levels, or remedy compliance errors, regarding all portions of the Consent Judgment, including but not limited to: (a) changes to Jail policies or standard operating procedures or practices; (b) personnel decisions, including but not limited to engagement of consultants (as set forth above), assignments, findings and disciplinary actions in misconduct cases and use-of-force reviews, and the discipline or demotion of staff; and (c) maintaining or eliminating OPSO programs or initiatives related to or affecting Consent Judgment tasks or objectives.  The Compliance Director will have the final authority to direct OPSO staff on all outstanding tasks and issues related to Consent Judgment compliance and the overall Consent Judgment objectives.

20.    Unless otherwise ordered, the Compliance Director's exercise of authority will be limited by the following:

a.    If changes to a Jail policy are required to implement a change in Jail operations, the Compliance Director shall follow the Consent Judgment requirements for policy development and implementation, Section VII.A.  If doing so would significantly delay progress with Consent Judgment compliance, the Compliance Director shall follow the process for resolving compliance impediments in Section [21.b.], *infra*.

b.    If the Compliance Director is unable to resolve an impediment to compliance through operation of this Order, the Compliance Director will consult with the Parties to try to address the impediment.  If, after such consultation, the impediment persists, the Compliance Director will propose a resolution to the Parties in writing. Within 7 calendar days of the Compliance Director's written notice, the Compliance Director or any Party may file a motion seeking Court intervention regarding the Compliance Director's proposed resolution.  If the impediment involves a non-party to this case or a state or local law or regulation, the Court shall hold a hearing and order any appropriate action.

21.    No Party shall interfere with or impair the Compliance Director's authority granted by this Order.

22.    Within 60 days of appointment, the City, the Sheriff, and the Compliance Director shall develop and finalize a plan for (1) appropriate housing for prisoners with mental health issues and medical needs, (2) addressing the housing needs of youthful offenders and (3) addressing the current conditions of the "Docks" facility, consistent with the terms of the Consent Judgment.   The City of New Orleans shall maintain final authority and approval over capital expenditures associated with that plan, including use of Templeman II FEMA funding exclusively for implementation of the plan.  The City and the Compliance Director shall consult

14

with the Monitors and the Plaintiffs to ensure that the proposed resolutions meet the standards required by the Consent Judgment.  The City, the Sheriff and the Compliance Director may enlist the assistance of the United States Magistrate Judge assigned to the case if necessary in developing and finalizing the plan.

23.     As it is the intent of the Parties that this agreement will address the pending claims concerning Jail funding, OPSO and the City agree to dismiss without prejudice any and all pending state or federal claims and appeals related to Jail and FEMA funding, other than the third party claim initially brought by the Sheriff against the City in this case.  Plaintiffs also agree to dismiss without prejudice the pending motion for contempt and for appointment of a receiver.

**E.     Termination of the Compliance Director's Authority**

1.     The Compliance Director's authority shall extend as defined in Paragraph A.2. above, or until otherwise ordered by the Court.

2.     No sooner than nine months after the appointment of the Compliance Director, the Sheriff may file a motion to terminate the Compliance Directorship on the basis that the Compliance Director has enabled the Orleans Parish Jail to achieve material progress with substantial compliance with all provisions of the Consent Judgment, as defined in Paragraph A.2. Prior to filing such a motion, the moving Party shall request a status conference with the Court. The other Parties shall have an opportunity to respond to or oppose that motion.  The Court will order an evidentiary hearing and permit all reasonable discovery associated with the Motion.

3.     Once the Compliance Director's appointment is terminated by the Court and authority for Jail administration and operations reverts to the Sheriff, OPSO and the Sheriff will continue to be subject to the requirement that compliance be sustained for the two-year period

required by § XI.C. of the Consent Judgment.   Any Party may Petition the Court for the Compliance Director's removal for good cause and the other Parties will have the opportunity to respond.  "Good cause" for these purposes shall include, but not be limited to: neglect of duties; willful misconduct; inappropriate personal relationship with any Party or Monitor; conflict(s) of interest; or any criminal conduct during the pendency of the appointment.

**G.     Amendment of Agreement**

This agreement may be amended by Court order or by consent of all parties, subject to Court approval.

**H.     Compliance with the Prison Litigation Reform Act (PLRA)**

The Court further finds that:

1.      OPSO is in non-compliance with Consent Judgment Sections IV.A.1-8, 10-11, IV.B.5, IV.D.1-4, and IV.G, which were entered as an Order of this Court on June 6, 2013;

2.      As a result, more specific remedial relief is necessary, as set forth below; and

3.      Based on a robust case record including over 80 status conferences and the evidence presented in these proceedings, the Court finds that the additional relief set forth above complies in all respects with the provisions of 18 U.S.C. § 3626(a).  The relief is narrowly drawn, extends no further than necessary to correct violations of federal rights affected by the Consent Judgment, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.

FOR THE UNITED STATES OF AMERICA:

KENNETH A. POLITE, JR.
U.S. Attorney
Eastern District of Louisiana

VANITA GUPTA
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Civil Rights Division

THEODORE CARTER III
Assistant United States Attorney
U. S. Attorney's Office
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130

STEVEN H. ROSENBAUM
Chief
U.S. Department of Justice
Civil Rights Division
Special Litigation Section

LAURA L. COON
Special Counsel
U.S. Department of Justice
Civil Rights Division
Special Litigation Section

KERRY K. DEAN
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section

COREY M. SANDERS
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave., NW
Washington, DC 20530

17

FOR THE PLAINTIFF CLASS:

KATIE SCHWARTZMANN, Bar No. 30295
ELIZABETH CUMMING, Bar No. 31685
EMILY WASHINGTON, Bar No. 34143
ERIC FOLEY, Bar No. 34199
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, LA 70119
(504) 620-2259
Katie.Schwartzmann@macarthurjustice.org
Emily.Washington@macarthurjustice.org

FOR SHERIFF MARLIN GUSMAN:    CHEHARDY, SHERMAN, WILLIAMS,
MURRAY, RECILE, STAKELUM
& HAYES, LLP

_____

JAMES M. WILLIAMS, BAR NO. 26141
INEMESIT U. O'BOYLE, BAR NO. 30007
RYAN P. MONSOUR, BAR NO. 33286
PATRICK R. FOLLETTE, BAR NO. 34547
One Galleria Boulevard, Suite 1100
Metairie, Louisiana  70001
Telephone: (504) 833-5600
Facsimile: (504) 833-8080

-AND-

USRY, WEEKS, AND MATTHEWS
FREEMAN MATTHEWS, BAR NO. 9050
BLAKE J. ARCURI, BAR NO. 32322
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
Telephone: (504) 592-6400
Facsimile: (504) 592-4641

FOR THE CITY OF NEW ORLEANS:

REBECCA H. DIETZ
City Attorney
1300 Perdido Street
New Orleans, Louisiana 70112
(504) 658-9920

**SO ORDERED.**

New Orleans, Louisiana,  this the _21_ day of _____ _June_ _____, 2016.


_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE