UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRACIE L. WASHINGTON | * | CIVIL ACTION NO. 19-CV-9719 |
| PLAINTIFF | * | |
| | * | JUDGE VITTER |
| VERSUS | * | |
| | * | MAG. JUDGE WILKINSON |
| SHERIFF MARLIN N. GUSMAN | * | |
| DEFENDANT | * | |
| | * | |

\* \* \* \* \* \* \* \*

### MEMORANDUM IN OPPOSITION TO SHERIFF GUSMAN'S MOTION TO DISMISS PLAINTIFF'S COMPLAING PURSUAN TO RULE 12(b)(6)

MAY IT PLEASE THE COURT:

Plaintiff, Tracie L. Washington (hereinafter "Washington"), respectfully urges the Court to deny the Motion to Dismiss by Defendant, Sheriff Marlin N. Gusman (hereinafter "Gusman") as it is inconsistent with the facts as pleaded and the applicable law. In particular, although a Stipulated Order in the Jones litigation may have deprived Gusman of some of the hiring and firing perogatives normally asociated with being sheriff of a parish, that did not somehow change the employer of Washington or any other OPSO employees to the employe of court appointed Compliance Director Hodge or any other party. Rather, for FMLA purposes Washington was still and employee of the OPSO. Additionally, Gusman is selective in his recitation of the facts as pleaded to create the appearance of Compliance Director Hodge legitimately terminating Washington from a position which did not exist, choosing to ignore the full context and the full

language of the Complaint which makes clear that Washington was occupying a position which did exist and to which she was entitled to return from her FMLA Leave.

Finally, as Gusman has opted to attach documents referred to or quoted in the Complaint, and an Order from other litigation related to Gusman and his office, Plaintiff will likewise use such documents to clarify the legal situation and why the Motion to Dismiss should be denied.

**I.      Background**

Ms. Washington was hired as the Compliance Coordinator and she began work in that position on May 19, 2014. (R. Doc. 1 at ¶¶ 5-7.) Her hiring was to satisfy the provisions of the June 6, 2013 Consent Judgment, which required in relevant part that:

> The parties agree that OPSO will hire and retain, or reassign a current OPSO employee for the duration of this Agreement, to serve as a full-time OPSO Compliance Coordinator. The Compliance Coordinator will serve as a liason between the Parties and the Monitor and will assist with OPSO' compliance with this Agreement. At a minimum, the Compliance Coordinator will: coordinate OPSO's compliance and implementation activities; facilitate the provision of data, documents, materials and access to OPSO's personnel to the Monitor, SPLC, DOJ, and the public, as needed; ensure that all documents and records are maintained as provided in this Agreement; ad assist in assigning compliance tasks to OPSO personnel, as directed by the Sheriff or his or her designee. The Compliance Coordinator will take primary responsibility for collecting information the Monitor requires to carry out the duties assigned to the Monitor. (Ex. 1, Jones litigation, June 6, 2013 Consent Judgment at p. 39.)

It is neither pleaded nor has any documentation been produced that this position was ever eliminated during the relevant time between Washington's hiring and her termination.

Gusman glosses over the fact that on August 1, 2014 Washington's title was changed to Chief Compliance Officer, but with no change in duties, salary, or benefits. (R. Doc. 1 at ¶¶ 9-10.)

Ultimately, on May 8, 2017, Washington was instructed to report to OPSO's then Chief of Corrections, Michael Tidwell. As is detailed at length in the Complaint, Washington was

subjected to sexual harassment and related conduct, and on February 26, 2018, the pressure of this harassment resulted in Washington experiencing dangerously high blood pressure. (R. Doc. 1 at ¶¶ 15-20.) On March 1, 2018, Washington began her sick leave, which lasted until April 23, 2018. This is the leave which was approved as FMLA leave. (R. Doc. 1 at ¶¶ 21-26.)

At the start of the sick leave/FMLA leave Mr. Tidwell wrote to Washington that she was to meet with Mr. Blake Arcuri on that date, March 1, 2018. The most important part of that memorandum is that it was addressed to Washington with the title of "Compliance Coordinator." (Ex. 2, March 1, 2018 Memo from Tidwell to Washington.) On April 23, 2018, Mr. Arcuri wrote to Washington telling her, in part, that her "position was, and remains "compliance coordinator, is apparent in the AS400." (Ex. 3, April 23, 2018 Email from Arcuri to Washington.)

On April 25, 2018, Hodges took the position that Washington was in a non-existent position, Chief Legal Officer, despite the fact that it was clear to Tidwell and Arcuri that Washington's position had not changed and she was the Compliance Coordinator. (Ex. 4, April 25, 2018, letter from Hodge to Washington.)

Other documentation supports the notion that Washington was ultimately in the Compliance Coordinator position regardless of title assigned or used. After she was terminated by OPSO, when she applied for other employment an employment verification form was sent and filled out by Albert "A.J." Placide of OPSO. (Ex. 5, Employment Verification Form.) In this form it is verified that Washington's position was "Compliance Coordinator". Similarly, Ms. Washington has accessed the ADP database for her personal records, and it still reflects her position was Compliance Coordinatator., (Ex. 6.)

One final document of note, since the defense has expanded what may be considered for this Motion to Dismiss, is the fact that none of the Employee Disciplinary Process put in place by

Hodge's predecessor, Maynard, was followed in Washington's summary dismissal. (Ex. 7, Employee Disciplinary Process.)

## II. Applicable Rules of Decision for a Fed. Rule Civ. P. 12(b)(6) Motion to Dismiss

The standards for evaluation and consideration of a FRCP 12(b)(6) motion are well established. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 239 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949. A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. Id. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Id. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. Lormand, 565 F.3d at 257.

## III. The Complaint Properly States a Claim

The first argument asserted by Gusman has surface appeal, but really avoids the relevant legal term for liability under FMLA. In particular, FMLA imparts liability to the "employer" who violates FMLA. 29 U.S.C.A. §2611. While certain powers of hiring and firing were judicially

4

delegated to Hodge, Hodge never became the actual "employer" of the employees at OPSO. Per the definitial provision of FMLA, "employer" ... "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during eavh of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C.A. §2611. Public agencies are, as a matter of law, considered to be "engaged in commerce or in an industry or activity affecting commerce." 29 U.S.C.A. §2611(4)(B). Whether Gusman could personally make the decision to terminate Washington or not, she was employed by the OPSO. It is worth noting that the if the contrary position is accepted that the right to hire and fire rendered Washington and all others working for OPSO employees of someone other than OPSO, as the Compliance Director only reported to the Court, then the absurd results of either the Compliance Director or the Court itself being the proper defendants. Even though Gusman could not hire and fire, his agencies payroll included Washington, that agency received the value of her work, and the job position she filled existed within that agency, not as part of the Court or the Compliance Director's offices by virtue of Judge Africk's earlier Consent Order. The only reasonable construction of the facts as pleaded is that Washington was employed by OPSO, and that Gusman in his official capacity was her employer.

     The second argument, that plaintiff's position had been eliminated, thereby terminating FMLA reinstatement or restoration rights, is in contradiction to the facts as alleged. Gusman bases his action on the termination letter from Hodge, which asserts that Washington was occupying a Chief Legal Officer position which had not been properly created, and therefore Hodge was terminating the position and Washington's employment. The notion that the matter should be dismissed on this argument seeks to have the Court ignore the substance of Paragraph 34 of the Complaint, in which it is alleged:

> Instead of responding to the complaint by Plaintiff against Acuri, Compliance Director Hodge used the excuse of eliminating the Chief Legal Officer position as subterfuge for the unlawful termination, knowing full well Plaintiff was in fact the Compliance Coordinator.

(R. Doc. 1 at ¶ 34.)

Plaintiff was hired as the Compliance Coordinator. While she may have used or been told to use other titles at various points in time, immediately before the FMLA leave Tidwell's communication made it clear that she was being addressed as Compliance Coordinator and Acuri's email on April 23, 2018, is quite strident that in the view of the OPSO her position never changed. Although the Court is now being provided with the documentation, to clarify the situation created by the selective use of documentation in connection with a Motion to Dismiss by the defense, these facts were alleged in the complaint. (R. Doc. 1 at ¶¶ 23-26.) Thus, the allegations of the Complaint, when fairly read together in context, and even more clearly with the relevant original documents, make it clear that Washington was in the Compliance Coordinator position which Judge Africk ordered be created, and she should have been returned to that position after her FMLA leave. It is at best curious and more likely conveniently disingenuous for Hodge to claim on April 25, 2018 that Washington was being fired from a non-existent position, Chief Legal Officer, when Acuri, as General Counsel for OPSO had written on 2 days earlier to clarify to Washington that she was the Compliance Coordinator.

The final argument advanced by Gusman is verbally artful, but of no legal moment when analyzed. Citing a case from the Middle District, Gusman urges, "Lastly, in order to prevail on her FMLA claim, Plaintiff would have to prove that she was terminated "*while* availing [herself] of the FMLA rights to which [she] was entitled." (R. Doc. 13-1 at p. 5, *citing Spears v. Louisiana Dep't of Pub. Safety & Corr.*, 2 F.Supp. 3d 873, 878 (M.D. La. 2014) (emphasis added in Gusman's brief).) A review of *Spears* reveals that the language cited is concerning an interference claim such

6

as actions taken in an attempt to prevent a plaintiff from asserting their FMLA rights or taking leave. As is properly asserted in the Complaint in this matter, Washington got to take her leave, but she was still asserting her FMLA rights when she sought restoration to her prior position or a substantially equivalent position. Thus *Spears* is actually not authority for the dismissal of Washington's claim.

Washington's claim is one that is well recognized in the law, a claim for a refusal to reinstate also known as a restoration claim. This claim is essentially a strict liability claim. *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999); *see also*, *Matamoros v. Ysleta Independent School Dist.*, 916 F.Supp.2d 723, 728-730 (W.D. Tex. 2012) (Explains, interprets, and applies *Nero*.).Plaintiff also asserts her statutory claim for damages pursuant to 29 U.S.C.A. §2617(a).

Another way to view FMLA claims is that there are three statutory claims, interference (including interference with reinstatement), retaliation against opposing any act made unlawful, and retaliation against a person who has filed a charge or participated in a proceeding related to a FMLA violation. Rothstein, Mark A. et al, *Employment Law* vol. 2 §4:35 (6th Ed., West 2019)(General discussion of enforcement provisions of FMLA.) As is explained in the Rothstein treatise commentary:

> An entitlement or interference claim prohibits employers from interfering with the "exercise of or the attempt to exercise, any right" provided by the FMLA. To prevail under this theory, the plaintiff must show only that he or she was denied a substantive benefit under the FMLA, such as leave or restoration from leave for a reason connected with the FMLA leave. The employer's intent is immaterial.
> Rothstein, Mark A. et al, *Employment Law* vol. 2 §4:35, pp. 1205-6 (6th Ed., West 2019)

Finally, although Washington contends she was never fully restored to performing her job functions as Compliance Coordinator, should the Court determine that the two day period was

7

sufficient to constitute restoration, then the claim stated is for retaliation and under the FRCP an amendment should be allowed to state that claim formally. Such retaliation claims are even explicitly recognized in the principal case relied upon by the defense, *Spears*, 2 F.Supp. 3d at 882; *see also*, *Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708 (W.D. Tex. 2008) (Recognizing claim for FMLA retaliation and denying summary judgment on same.).

### IV. Conclusion

Ms. Washington respectfully urges the Court to deny the Motion to Dismiss. She clearly alleged in her Complaint that she was in the Compliance Coordinator position at the start of her FMLA leave, that she was in that position at the end of her FMLA leave, and that Mr. Tidwell, her supervisor, and Mr. Acuri, the General Counsel for OPSO had made that clear in writing. The notion at that point that any person acting for OPSO could then claim she was in any other position and terminate the position as improperly created and terminate her employment is properly alleged to be a subterfuge for a FMLA violation. Also, the argument that she has no claim for interference because she was not asserting her FMLA rights at the time is without merit, she was seeking

restoration to her position at the time of her termination. Alternatively, she has alleged a retaliation claim. In either case, the Motion to Dismiss should be denied.

                          Respectfully Submitted,

                          ____s/Donald L. Hyatt, II_____
                          DONALD L. HYATT, II (24808)
                          DONALD L. HYATT, II APLC
                          1217 Florida Street
                          Mandeville, LA 70448
                          Telephone: (504) 813-6727
                          Facsimile: (866) 377-8671
                          E-mail: hyattlaw@aol.com
                          ***COUNSEL FOR THE PLAINTIFF,***
                          ***TRACIE L. WASHINGTON***

CERTIFICATE OF SERVICE

     I hereby certify that on August 5, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document by first class mail to all non-CM/ECF participants.

                                                                                                                   s/Donald L. Hyatt, II