UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRACIE L. WASHINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9719-WBV-DPC** |
| **MARLIN N. GUSMAN, SHERIFF FOR THE PARISH OF ORLEANS** | **SECTION "D"(2)** |

### ORDER AND REASONS

Before the Court is the Motion to Dismiss for Failure to State a Claim,[1] filed by Defendant Marlin N. Gusman ("Gusman"), Sheriff for the Parish of Orleans; the Response in Opposition,[2] filed by Plaintiff Tracie L. Washington, and the Reply,[3] filed by Defendant Gusman.

I.   FACTUAL BACKGROUND

Plaintiff Tracie L. Washington filed a complaint against Defendant Marlin N. Gusman, Sheriff for the Parish of Orleans, seeking compensatory damages and declaratory relief under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617.[4]

The plaintiff alleges that she began working for the Orleans Parish Sheriff's Office ("OPSO") as Compliance Coordinator on May 19, 2014.[5] Plaintiff further

---

[1] R. Doc. 13.
[2] R. Doc. 15.
[3] R. Doc. 20.
[4] R. Doc. 1.
[5] R. Doc. 1, ¶ 7.

asserts that her title changed, effective August 1, 2014, to Chief Compliance Officer, without any change in duties or benefits.[6] The plaintiff asserts that her job was changed to Chief Legal Officer on November 18, 2016, expanding her duties to "supervise and coordinate all inmate legal requests, be an instructor for the Training Academy in Sexual Harassment and Ethics, the designated responder to any Public Records Requests, the designated Ethics Offer, and the reviewer of legal billings."[7]

According to the plaintiff's Complaint, she was reassigned to report to OPSO's Chief of Corrections on May 8, 2017, while retaining her title as Chief Legal Officer.[8] The plaintiff advises that she performed this job until February 26, 2018.[9] She alleges that on that date, her supervisor, the Chief of Corrections, summoned her to speak with him while she was walking outside, returning from lunch. He was seated in his vehicle. Plaintiff alleges that the supervisor advised that he was relocating her work space to an area near his office, stating, "I need to keep an eye on you."[10] Plaintiff further states that the supervisor's pants were unzipped and his genitals were exposed.[11] She returned to her office and "began receiving harassing emails and calls that resulted in Plaintiff becoming disoriented, dizzy, and experiencing blurred vision."[12] Plaintiff left the office and sought medical attention at which time she was advised that her blood pressure was dangerously high.[13] She was subsequently taken

---

[6] R. Doc. 1, ¶9, 10.
[7] R. Doc. 1, ¶ 14.
[8] R. Doc. 1, ¶15.
[9] R. Doc. 1, ¶18.
[10] R. Doc. 1, ¶ 19.
[11] *Id.*
[12] R. Doc. 1, ¶ 20.
[13] *Id.*

to a hospital for treatment.[14] Plaintiff asserts that she wrote to Defendant Gusman on February 28, 2018, advising that her blood pressure had not stabilized and that she would not be able to return to work until it did.[15] On March 1, 2018, Washington began her sick leave, which lasted until April 23, 2018.[16] On Monday, April 23, 2018, the plaintiff returned to work from sick leave and submitted her request for FMLA leave status covering the period March 1, 2018 – April 23, 2018.[17]

Upon her return on April 23, 2018, Plaintiff asserts that she was sent an email from the OPSO General Counsel advising:

> a. You've never held the position of 'Chief Legal Officer,' nor have you ever worked in any such capacity for the Orleans Parish Sheriff's Officer;
> b. Plaintiff had falsified the title 'Chief Legal Officer' and conferred it upon herself;
> c. Plaintiff's employment file 'has never contained that reference, a personnel action form granting that tile [sic] had never been signed, and perhaps most importantly, the position has not existed at this agency during your employment; and
> d. You position was, and remains 'compliance coordinator,' as is apparent in the AS400.

R. Doc. 1, ¶ 26 (quotation marks omitted). At some point, the plaintiff presented the General Counsel with a copy of Defendant's November 18, 2016 email wherein her title changed to Chief Legal Officer and he "became unhinged and began screaming" at the plaintiff, causing her to "experience severe hypertensive episode."[18] The following day, Plaintiff wrote to the General Counsel's supervisor, the Independent

---

[14] *Id.*
[15] R. Doc. 1, ¶ 21.
[16] R. Doc. 1, ¶¶ 21-26.
[17] R. Doc. 1, ¶ 24.
[18] R. Doc. 1, ¶ 26.

Jail Compliance Director Darnley Hodge ("Hodge"), providing full details of what she advised had transpired the day before.[19] That same day, April 24, 2018, Plaintiff's FMLA leave request was approved.[20] Two days later, on April 26, 2018, Plaintiff was handed a letter from Compliance Director Hodge informing her that "Sheriff Gusman had no authority to give you a title or employment duties [on November 18, 2016]. I am eliminating this unauthorized position [Chief Legal Officer], and, in my capacity as Compliance Director, terminating your employment, effective immediately."[21] In the letter, Hodge states that he was appointed as Independent Jail Compliance Director of the Orleans Parish jail facilities by Judge Lance Africk in *Jones v. Gusman*, Civil Action No. 12-859, R. Docs. 1082 and 1151:

> The duties of the Compliance Director are provided for in the Stipulated Order for Appointment of Independent Jail Compliance Director ("Stipulated Order"). *Jones*, Doc. No. 1082. As Compliance Director, I have "final authority to operate the Orleans Parish Jail," *id.* at 2, including the "final authority to create, modify, abolish or transfer employee and contractor positions; [and] to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees and contractors. . . ." *Id.* at 12.

R. Doc. 13-3. In the letter, Hodge states that it recently came to his attention that "on November 18, 2016, Sheriff Marlin Gusman sent you an email designating you as the 'Chief Legal Officer,' and assigning you certain duties," associated with that position. Hodge goes on to state,

> At the time of this email, however, the Stipulated Order was in place, and Director Maynard was serving in the role of Compliance Director.

---

[19] R. Doc. 1, ¶27.
[20] R. Doc. 1, ¶28.
[21] R. Doc. 1, ¶ 33, referencing R. Doc. 13-3.

> *Jones*, Doc. No. 1097 at 1 (noting that Director Maynard would begin full-time employment on October 1, 2016). Accordingly, Sheriff Gusman had no authority to give you a title or employment duties. I am eliminating this unauthorized position, and, in my capacity as Compliance Director, terminating your employment, effective immediately.

R. Doc. 13-3.

On April 24, 2019, Plaintiff filed this lawsuit alleging a violation of the Family Medical Leave Act, 29 U.S.C. § 2617, seeking compensatory damages as "Plaintiff was denied restoration to the same or an equivalent position" and seeking Declaratory Relief of "A declaration of the rights and obligations of the parties pursuant to the FMLA . . . binding in any subsequent action or actions to recover further costs incurred by Plaintiff."[22]

The defendant moves to dismiss the action for failure to state a claim upon which relief may be granted under the FMLA, 29 U.S.C. § 2601, *et seq.* The defendant argues that the plaintiff fails to state a claim upon which relief can be granted against him because "her position was never properly authorized pursuant to a Stipulated Order entered into by Sheriff Gusman and various parties and adopted by Judge Africk on June 21, 2016."[23] The defendant contends that the Stipulated Order grants the Court-appointed Compliance Director, not Sheriff Gusman, "final authority" over all personnel decisions, including the ability to hire and fire employees and abolish positions.[24] The defendant cites the plaintiff's complaint as support for the fact that

---

[22] R. Doc. 1, ¶ 40-50.
[23] R. Doc. 13-2. The Court notes that the defendant requests that the Court take notice of the attached Order from United States District Judge Lance Africk, stating that the Order is a matter of public record and that the plaintiff relies upon the Order throughout her Complaint. R. Doc. 13-1, p. 2, n. 1.
[24] R. Doc. 13-1, p. 2; R. Doc. 13-2.

Hodge, the current Compliance Director, not Sheriff Gusman, eliminated the plaintiff's position pursuant to his authority under the Order "because her position was never authorized."[25]

According to the defendant, the plaintiff is attempting to use the FMLA to circumvent Compliance Director Hodge's authority over all personnel decisions relating to OPSO. "However, an employee's right to reinstatement under the FMLA has nothing to do with, and did not prevent Compliance Director Hodge from, exercising his authority under the Order. Sheriff Gusman has no authority under the law to interfere with or impair Compliance Director Hodge's final authority over personnel decisions at OPSO."[26] The defendant further argues that "it is indisputable that an employee does not have a right to reinstatement under the FMLA if that employee's position has been properly eliminated."[27]

The defendant avers that the plaintiff's lawsuit rests upon the erroneous assertion that the defendant is the official policymaker for OPSO. He states that the plaintiff appears to credit the defendant with powers designated to the Compliance Director alone.[28] The defendant posits that the complaint does not contain a single

---

[25] R. Doc. 13-1, p. 2. "On April 26, 2018, Plaintiff returned to work but was met by Debra Hammons, who gave her a letter from Hodge (letter dated April 25, 2018), informing Plaintiff 'Sheriff Gusman had no authority to give you a title or employment duties [on November 18, 2016]. I am eliminating this unauthorized position [Chief Legal Officer], and, in my capacity as Compliance Director, terminating your employment, effective immediately.'" R. Doc. 1, ¶ 33.
[26] R. Doc. 13-1, p. 2.
[27] R. Doc. 13-1, pp. 2-3.
[28] The defendant states,
> In 2016, the Sheriff, the United States of America, and the Class Plaintiffs in *Jones, et al. v. Gusman, et al.,* E.D. La. No. 12-00859, entered a Stipulated Order for Appointment of Independent Jail Compliance Director (the "Order"), which was adopted by Judge Africk on June 21, 2016. (*See* Ex. A.) Under the terms of the Order, Judge Africk appointed a Compliance Director with the "final authority to create, modify, abolish or transfer employee and contractor positions [and] to recruit, hire,

allegation that he, Sheriff Gusman, was involved in the plaintiff's termination—the only basis for this lawsuit.[29] He argues, "The absence of such an allegation is for good reason, as it is indisputable that all of the events about which Plaintiff complains occurred during the tenure of the Court-appointed Compliance Director."[30]

The defendant states that it is clear that on the date of Plaintiff's termination, April 26, 2018, Compliance Director Darnley Hodge was the final policymaker for OPSO per the Stipulated Order and that no other party, including Sheriff Gusman, could interfere or impair the Compliance Director's authority. "Thus, as a matter of law, Sheriff Gusman had no authority whatsoever regarding the decision to terminate Plaintiff."[31]

The defendant further argues that it is well-established in the Fifth Circuit that an employee does not have a right to reinstatement if the employee's position has been terminated.[32] Finally, defendant argues that, in order to prevail on her FMLA claim, the plaintiff must show that she was terminated during her leave.[33] The

---

discipline, terminate, promote, demote, transfer, and evaluate employees." (Ex. A, p. 12.) Additionally, the Order explicitly grants the Compliance Director the authority to terminate employees for reasons related to "financial prudence" and "operational efficiency." (*Id.*) The Compliance Director is "answerable only to the Court," and "is a representative of the Court [rather than] an employee of OPSO." (*Id.*, pp. 3, 11.).
R. Doc. 13-1, pp. 3-4.
[29] R. Doc. 13-1, p. 4.
[30] *Id.*
[31] R. Doc. 13-1, p. 5; R. Doc. 13-2, p. 14.
[32] *Forbes v. Unit Texas Drilling, L.L.C.,* 526 F. App'x 376, 380 (5th Cir. 2013).
[33] *Spears v. La. Dept. of Public Safety & Corrections*, 2 F. Supp. 3d 873, 878 (M.D. La. 2014) (finding that the plaintiff failed to present summary judgment evidence to establish the defendant denied him the benefits to which he was entitled under the FMLA because the plaintiff was terminated once he returned to work) ("In order for Plaintiff to prevail, he must have been terminated while he was availing himself of the FMLA rights to which he was entitled."). *Id.*

defendant emphasizes that the plaintiff admits that she was allowed to take FMLA leave, and she was not terminated until after she had returned from such leave.[34]

Plaintiff filed an Opposition, urging the Court to deny the pending motion to dismiss, stating

> [A]lthough a Stipulated Order in the Jones litigation may have deprived Gusman of some of the hiring and firing perogatives [sic] normally asociated [sic] with being sheriff of a parish, that did not somehow change the employer of Washington or any other OPSO employees to the employe [sic] of court appointed Compliance Director Hodge or any other party. Rather, for FMLA purposes Washington was still and [sic] employee of the OPSO.

R. Doc. 15. The plaintiff states that the defendant is selective in his recitation of facts "to create the appearance of Compliance Director Hodge legitimately terminating [her] form [sic] a position which did not exist[.]"[35] The plaintiff contends that she was hired to satisfy the provisions of the June 6, 2013 Consent Judgment, which required OPSO to hire or reassign a current OPSO employee to serve as a full-time OPSO Compliance Coordinator.[36] The plaintiff alleges that on August 1, 2014, her title was changed from Compliance Coordinator to Chief Compliance Officer, with no change in duties, salary, or benefits.[37]

As support for her contention that her position was legitimate, the plaintiff directs the Court's attention to a memorandum dated March 1, 2018, from Chief of Corrections Tidwell and addressed to the plaintiff with the title of "Compliance

---

[34] R. Doc. 13-1, p. 6; R. Doc. 1, ¶¶ 28-34.
[35] R. Doc. 15, p. 1.
[36] R. Doc. 15, p. 2.
[37] R. Doc. 1, ¶¶ 9-10.

Coordinator."[38] The plaintiff also directs the Court to an email General Counsel Blake Arcuri ("Arcuri") wrote to the plaintiff. In the email, Arcuri admonishes the plaintiff for conferring upon herself the title of "Chief Legal Officer," stating that her employment file has never contained that reference and that the position did not exist during her employment.[39] He writes, "Your position was, and remains "compliance coordinator," as is apparent in the AS400."[40]

The plaintiff argues that the FMLA holds the employer liable and by the FMLA's definition, Sheriff Gusman, not the Compliance Director, meets that definition, even though Sheriff Gusman held no authority over the decision to hire or fire the plaintiff.[41] The plaintiff argues, "It is worth noting that the if the contrary position is accepted that the right to hire and fire rendered Washington and all others working for OPSO employees of someone other than OPSO, as the Compliance Director only reported to the Court, then the absurd results of either the Compliance Director or the Court itself being the proper defendants."[42]

Regarding the defendant's argument that the plaintiff cannot show that her position was terminated "while availing [herself] of the FMLA rights to which [s]he was entitled,"[43] the plaintiff rejoins that "she was still asserting her FMLA rights

---

[38] R. Doc. 15-2.
[39] *Id.*
[40] *Id.*
[41] R. Doc. 15, p. 5; 29 U.S.C. § 2611(4) (stating "(A) The term "employer"—(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year; (ii) includes—(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and (II) any successor in interest of an employer[.]"). *Id.*
[42] R. Doc. 15, p. 5.
[43] *Spears v. La. Dept. of Public Safety & Corrections*, 2 F. Supp. 3d 873, 878 (M.D. La. 2014).

when she sought restoration to her prior position or a substantially equivalent position."[44] The plaintiff argues that the case cited by the defendant, *Spears v. La. Dept. of Public Safety & Corrections*, 2 F. Supp. 3d 873 (M.D. La. 2014), is not authority for the dismissal the plaintiff's claim.[45] In *Spears*, the district court found that the plaintiff failed to present summary judgment evidence to establish the defendant denied him the benefits to which he was entitled under the FMLA because the plaintiff was terminated once he returned to work.

The plaintiff alternatively argues that although she contends she was never fully restored to performing her job functions as Compliance Coordinator, "should the Court determine that the two day period was sufficient to constitute restoration, then the claim stated is for retaliation and under the FRCP an amendment should be allowed to state that claim formally."[46] The Court notes that the motion to dismiss was filed on July 23, 2019, and the plaintiff's response, which includes her statement that she should be allowed an amendment for alternative claims of FMLA interference and retaliation, was filed on August 5, 2019. On August 27, 2019, the parties conferred with the Case Manager to set the Scheduling Order, which provides that amendments to pleadings shall be filed no later than September 23, 2019.[47] It is clear that the plaintiff contemplated the option to amend her complaint, had weeks to do so, and chose not to amend the complaint. The Court further notes that the parties jointly moved to continue all deadlines and this motion was granted on April

---

[44] R. Doc. 15, p. 7.
[45] *Id.*
[46] R. Doc. 15, pp. 7-8.
[47] R. Doc. 21.

23, 2020. The revised Scheduling Order, entered on April 23, 2020, provides that amendments to pleadings shall be filed no later than May 25, 2020. The plaintiff still chose not to amend her complaint to include claims of FMLA interference and/or retaliation.

## II. LEGAL STANDARD

To overcome the defendant's motion, the plaintiff must plead a plausible claim for relief.[48] A claim is plausible if it is pleaded with factual content that allows the Court to reasonably infer that the defendant is liable for the misconduct alleged.[49] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[50] In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[51] Although a complaint need not contain detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[52] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[53]

---

[48] *Romero v. City of Grapevine, Tex.*, 888 F. 3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[49] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).
[50] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F. 3d 1029, 1032 (5th Cir. 2010) (per curiam).
[51] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[52] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).
[53] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).

### A. *Considering Additional Documents*

The United States Fifth Circuit Court of Appeals has made clear that in deciding whether to grant a motion to dismiss, a district court may not go outside the complaint.[54] There is one exception to that general rule: "A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim."[55] If the Court considers information outside of the complaint, it must treat the motion to dismiss as a motion for summary judgment.[56] In such cases where the Court treats a motion to dismiss as a motion for summary judgment, the Court must first give the parties notice and then may consider all evidence presented.[57]

### B. *Family and Medical Leave Act ("FMLA")*

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."[58] The statute guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave relates to an employee's serious medical condition.[59] "The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted

---

[54] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Spears v. La. Dept. of Public Safety & Corrections*, 2 F. Supp. 3d 873, 877 (M.D. La. 2014); 29 U.S.C. § 2601(b)(2).
[59] *Spears*, 2 F. Supp. 3d at 877; 29 U.S.C. § 2612(a)(1).

exercise of an employee's right to take FMLA leave."[60] Under the FMLA, it is unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any unlawful FMLA practices.[61]

       *i.     FMLA Restoration/Reinstatement Claim*

When the employee returns from FMLA leave, she must be reinstated "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions."[62] "An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1)."[63] "[D]enying reinstatement to an employee whose right to restored employment had already been extinguished – for legitimate reasons unrelated to his efforts to secure FMLA leave – does not violate the Act."[64] An employee cannot prevail on an FMLA claim if the defendant can show that the employee would have lost her position even had she not taken FMLA leave.[65] "An employer is not required to restore an employee to a position when the position has been eliminated."[66] The fact that FMLA leave is approved, as it was in this action, does not create the guarantee of employment:[67] "While the taking of FMLA leave should not expose an employee to job loss owing to the taking of leave, the leave itself does not create a job guarantee where factors unrelated to the leave affect continued employment."[68]

---

[60] *Id.*, citing 29 U.S.C. § 2615(a)(1).
[61] 29 U.S.C. § 2615(a)(2).
[62] 29 U.S.C. § 2614(a)(1).
[63] *Amedee v. Shell Chemical LP-Geismer Plant*, 384 F. Supp. 3d 613, 629 (M.D. La. 2019).
[64] *Id.* at 632.
[65] *Id.*
[66] *Id.* at 633.
[67] *Id.*
[68] *Id.*

      *ii.*    *FMLA Interference Claim*

Because the parties dispute the factors of a FMLA interference claim, the Court includes the applicable law to avoid confusion but, importantly, notes that the plaintiff has made no FMLA interference claim. To prevail on a FMLA claim, a plaintiff must show that: (1) she was an eligible employee, (2) the Defendant was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) the Defendant denied her the benefits to which she was entitled under the FMLA.[69]

### III.   ANALYSIS

#### A. *Documents Considered*

The defendant in his Reply states that the Court should not consider Exhibits 2, 5, 6, and 7, which are attached to the plaintiff's Response in Opposition. He argues that these exhibits are neither referenced in the Complaint nor central to the plaintiff's claim and are thus outside the scope of the Motion to Dismiss analysis. However, the Court notes that the plaintiff specifically references Exhibit 2, an email from Michael Tidwell addressed to the plaintiff with the title "Compliance Coordinator," in paragraph 24 of her Complaint. Therefore, the Court properly considers the exhibit without converting the motion to dismiss into a motion for summary judgment.[70] Exhibit 5 appears to be an employee verification form dated August 9, 2018. Although the exhibit is referenced in the complaint, the Court finds

---

[69] *Spears v. La. Dept. of Public Safety & Corrections*, 2 F. Supp. 3d 873, 877-78 (M.D. La. 2014).
[70] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

it tangential at best and not central to the plaintiff's claim. Therefore, the Court does not consider Exhibit 5 in deciding the motion to dismiss.

Regarding Exhibit 6, the plaintiff states that she "has accessed the ADP database for her personal records, and it still reflects her position was Compliance Coordinatator [*sic*]."[71] Although the plaintiff references the ADP in her complaint, "On April 26, 2018 OPSO's payroll system (ADP) still listed Plaintiff as Compliance Coordinator[,]" the Court does not find the referenced attachment central to her claim.[72] Therefore, that document is also disregarded for purposes of deciding the motion to dismiss.

Regarding the final attachment, Exhibit 7, the plaintiff writes in her Response in Opposition, "One final document of note, since the defense has expanded what may be considered for this Motion to Dismiss, is the fact that none of the Employee Disciplinary Process put in place by Hodge's predecessor, Maynard, was followed in Washington's summary dismissal. (Ex. 7, Employee Disciplinary Process.)"[73] The Court notes that the defendant has not "expanded" what the Court may consider, as the plaintiff may think. As discussed above, the legal standard for considering documents outside of the complaint without converting a motion to dismiss into a motion for summary judgment is determined by an analysis of whether the document is referenced in the complaint and central to the plaintiff's claim. The defendant did not expand this exception to the general rule that the Court may not consider

---

[71] R. Doc. 15, p. 3.
[72] R. Doc. 1, ¶ 36.
[73] R. Doc. 15, pp. 3-4.

documents outside of the complaint in deciding a motion to dismiss. The contents of Exhibit 7 are not referred to in the plaintiff's complaint and are tangential at best. Therefore, the Court does not consider the exhibit in this analysis.

### B. *FMLA Claim*

The Court finds that the plaintiff was an eligible employee, as defined by the FMLA; Defendant Sheriff Gusman is an employer subject to the FMLA's requirements; the plaintiff was entitled to FMLA leave; she gave proper notice of her intention to take FMLA leave; and this leave was approved as FMLA leave. These facts are not in serious dispute.

The parties dispute whether *Spears* applies to case at hand. The *Spears* court discussed that only the fifth prong of the FMLA interference factors,[74] whether the defendant denied the plaintiff of FMLA benefits, was in dispute in the case. The *Spears* court found in favor of the defendant because "[i]t was not until Plaintiff returned to work that the Defendant terminated him."[75] The plaintiff argues that *Spears* does not apply to the matter at hand because the plaintiff's claim is a restoration claim: "Plaintiff was entitled to restoration to her position as described in the FMLA, 29 U.S.C. 2614(1), and Plaintiff was denied restoration to the same or an equivalent position as prescribed in the FMLA."[76] It is important to note that the

---

[74] To prevail on a FMLA interference claim, a plaintiff must show that: (1) she was an eligible employee, (2) the Defendant was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of his intention to take FMLA leave, and (5) the Defendant denied her the benefits to which he was entitled under the FMLA. *Spears*, 2 F. Supp. 3d 873, 877-78 (M.D. La. 2014).
[75] *Id.*
[76] R. Doc. 15, p. 7.

plaintiff recognizes that she made a claim only for restoration, not FMLA interference or retaliation. In *Spears*, the court read the plaintiff's FMLA interference claim to be a retaliation claim, styled as an interference claim.[77] The *Spears* court allowed itself this interpretation because the retaliation claim had already been alleged in the plaintiff's complaint.[78] Notably, the Court cannot make such a leap in this action, as the plaintiff did not plead a retaliation claim. Because the plaintiff pled only a restoration claim, *Spears* does not apply. Therefore, the Court analyzes whether the plaintiff can prevail on her FMLA restoration/reinstatement claim under the applicable law.

The Court notes that 29 U.S.C. § 2614(a)(3) clearly states a limitation to the right to reinstatement: "Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." A legitimate cause for termination precludes the plaintiff's FMLA restoration claim.[79] Therefore, the right to reinstatement is not absolute.[80] An employer can deny reinstatement if it can demonstrate that it would have terminated the plaintiff's position had she not been on FMLA leave.

The plaintiff argues that the Compliance Director's reason for terminating the her position was pretextual: "Instead of responding to the complaint by Plaintiff against Arcuri, Compliance Director Hodge used the excuse of eliminating the Chief Legal

---

[77] *Spears*, 2 F. Supp. 3d 873, 878 (M.D. La. 2014).
[78] *Id.*
[79] *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 683 (5th Cir. 2013).
[80] *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010).

Officer position as subterfuge for the unlawful termination, knowing full well Plaintiff was in fact the Compliance Coordinator."[81] Even considering Exhibits 2 and 3, which the plaintiff cites as support for the plaintiff's new argument that her true position was "Compliance Coordinator," the plaintiff's complaint alleges that she was entitled to return to work as the Chief Legal Officer or as the Compliance Coordinator or an equivalent position. Regardless of the disputed title, the Court finds that Compliance Director Hodge rightfully terminated her position and that the plaintiff would not have been entitled to the position had she not taken leave. The plaintiff's employment, regardless of the title of her position, was unauthorized because she was allegedly hired by the defendant, Sheriff Gusman, who had no authority to hire her. The Court finds that the defendant articulated a legitimate, nondiscriminatory reason for Compliance Director Hodge's decision to terminate the plaintiff's position.

Accordingly,

IT IS HEREBY ORDERED that the motion (R. Doc. 13) is GRANTED. A Final Judgment will follow.

New Orleans, Louisiana, this the 17th day of July, 2020.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[81] R. Doc. 1, p. 7.